appeal number 23-24-26. I saw Mr. Hillis in the audience. In the courtroom a minute ago. No problem. Thank you. Okay, Mr. Hillis, nice to see you. Go right ahead. I see you, Judge. May it please the Court, Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Brian McKenzie on this appeal. Mr. McKenzie is here seeking relief under 28 U.S.C. 2106. So in Claiborne, perhaps to the surprise of some, it articulated two paths forward for potential relief for an individual who, like my client, has criminal history points that were for something that the guidelines no longer give the two points for, committing an offense while under a criminal justice sentence. My client appropriately received those points at the time of sentencing, but the commission has since ended that two-point provision, and my client, as the government points out in its brief, and we knew coming into this, would not be eligible for 3582C relief. So that takes us down to one path for possible relief. Now, importantly, 2106 does not contain a prohibition such as 3582C would with respect to a below guidance. I couldn't determine from the record, was the district court made aware that the amendment was pending? No.  No. Judge Pryor, that's a critical feature here, because when we get to the inoculating statement the government supposes, we've recently had cases, you know, just as a couple weeks ago, and it's repeated the concern that how can a judge make an inoculating statement for an issue that wasn't brought to the judge's attention. We do not have that possibility of a parallel sentencing result in a BAS and the other cases that we would focus on for that sort of thing. And so there is no ability to reach and protect the outcome of the case by reference to an inoculating statement. We have, though, 2106, and the language in 2106 is appropriately broad, and it does not tell us that we get relief, but it doesn't tell us that we don't get relief either. It's just under the circumstances. Seeing that Mr. McKenzie was given a sentence below even the amended sentencing range, if he was to be sentenced today under the new standard, why would relief under Section 2106 be appropriate as far as applying the discretion? I think that the short answer is the anchoring effect. The guidelines— Could you say it again? I'm sorry. The anchoring effect. I'm sorry, Judge. So in Navarro and other cases, and the academic literature is pretty full on this topic as well, we know that courts for decades have focused pretty prominently on the impact of the guideline range. And so if we start with a higher range and even we're going to go below the guideline range, then we have the anchoring effect that is perhaps skewing the sentence higher than it would be otherwise. So my client gets 180 months, but take off the two criminal history points, and if the judge were to start with the lower range, it is a very fair possibility that he gets a sentence that's below the 180. And any day in prison beyond what you should serve is a day too many. We'd like my client at least to have the prospect, the possibility of going in, and the judge can say in my discretion yes or no, but he should have the opportunity, my client, to go and have the judge explain why or why not. And that's all we're asking for. I have a similar question maybe with a slightly different angle on it. I mean, you know this from the whole Thacker line of cases. What I worry about is the use of 2106, which is much more general than 3582C2, okay? The use of 2106 to bypass the specific limitation that Judge Pryor pointed to, you know, by the incorporation of 1B, what is it, 1B1.10, that way. So that's the ‑‑ I hear you on the anchoring effect. I think that's probably the best you can do on it. But I worry about that. What I see is kind of a bypass, allowing that general statute to circumvent the more specific limitation. So can you speak to that? I can. I just think they're two different things. So it's not uncommon in the law to have multiple avenues for relief for somebody, and here we would have an instance where that's possible too. We're not circumventing anything. I would say that by and large, this is a feature that would be unusual for any case. So we're not going to have a floodgate effect. This is a circumstance where everybody else who's presently sentenced or had the retroactivity that could be established otherwise would be entitled to the two criminal history points coming off. My client's in this peculiar intermediate position where he got sentenced before the retroactive guideline took effect. Nobody noticed it. He's in a very small group. He may be in a category of one so far as I know. And we do not have a lot of them. Why is that? In other words, why couldn't a whole bunch of defendants say, I can't take advantage of the amendment because of the limitation 3582C2? Okay, I'm stuck there. So what I'm going to do is I'm going to file a 2106 motion. They're probably past time, Judge. I imagine there's a timing provision that would prevent somebody at this late date from coming forward and saying I was sentenced however many years ago. Like either within 2106 or within 2106 case law or something? Where does the timing limitation come from? As I say, it's not been something that was pointed out by the government, but I'm imagining there has to be an effective limitation somewhere on that. And again, speculating at this point based on what Your Honor's question is, it's all that I can try to do to answer the question since it wasn't briefed. But I doubt very much that there are many people in my client's category, and I doubt very much that there's somebody who has years earlier gotten two criminal history points who can come in before the court and gain relief. My client's in an unusual position where we raise this as quickly as we could per Claiborne because once Claiborne was decided, we were able to point out the 2106 issue, and I wouldn't see a timing limitation here if there is one. But it is, again, I think a very different set of circumstances where you have somebody else who noticed the two criminal history points, said nothing about it, the judge was aware of it, a different set of circumstances. We have, I think, a clear instance where the anchoring effect skewed the sentence, and if I'm wrong on this— But here, isn't it somewhat distinctive from Claiborne where, in that case in particular, the proposed amendment was not— it wasn't—but what was distinguishing for me is that in Claiborne, the judge anchored their sentence at the low end of the guideline range, and there was discussion as to whether or not the judge would have— if the judge knew that the offense level was different, would it have anchored to the low end of the new amended guideline range? But we don't have that here. We don't, and so I'd say that that's a reason to remand, not to fail to give relief, because if it's an open question, then we can't say that there is a conclusive answer to that. And this is not an expensive, time-consuming process. We're not asking to undo a jury trial. We're asking for a rather efficient and concise proceeding that would address this, and that would be the end of things. So I wouldn't want my client to miss the opportunity because of his unusual circumstances when 2106 would seem to afford the relief that we're seeking here. I have nothing further. Thank you. Okay. Ms. Chung will hear from the government. Good morning, and may it please the Court. Ashley Chung on behalf of the United States. This Court should affirm the defendant's sentence and deny defendant's request for a remand and resentencing under 2106. Here, as the parties have acknowledged in their briefs, as well as today before this panel, it's undisputed that the defendant is not entitled to a reduction under 3582. That makes this case entirely different from Claiborne, where everyone agrees. Can we drill down a little bit on Judge Scudder's question? Is there any support to the notion that if you're barred from seeking relief under 3582C, then you are also barred from seeking relief under 2106? Your Honor, I think there is. And I think that is part of the analysis in Claiborne, where it was specifically because the Court saw no difference between, in that case, 3582 and 2106 as vehicles for the defendant's requested relief, that the Court decided it was just under those specific circumstances to allow the remand under 2106. In contrast, here, the defendant... Have we, in other cases, used 2106 to remand for resentencing not tied to 3582C? Not that I'm aware of, Your Honor. The instances that I've seen where this Court has exercised its power under 2106, first in the criminal context, where there have been remands under that statute for resentencing, it has largely come up in the context where there was also some kind of error on sentencing below. For example, in Adams, in Young, as well as in Taylor. In my research, what I've seen is Claiborne is one instance where there was a remand for resentencing where there was no error, subject to the very specific set of circumstances and timing that arose in Claiborne. And then there was also a civil case, Bell v. McAdory, my apologies if I'm butchering that, which this Court cited in Claiborne as an example of remanding under 2106 where there was no error. One of those, if I'm not mistaken, is correcting Scrivener's errors, clerical errors, things like that. That's correct, Your Honor. And so correcting those types of errors are also something that is specifically contemplated under 3582, which allows for specifically notes in 3582C1B that the Court can modify sentences to the extent it's permitted under, for example, Rule 35, where there's clear error or a reduction for substantial assistance. Yeah, the question that Judge Pryor is getting at is take, for example, maybe Mr. Hillis wants to speak to this, take, for example, a defendant that is clearly either timed out or barred under 2255 and says, well, I recognize that, so I can't go in under 2255. It's going to be instantly dismissed. I'm going to go in under 2106. And 2106 is going to allow me to bypass limitations in 2255. I can't imagine we would allow that. Exactly, Your Honor. And that's because 2255, like other collateral attack statutes, are statutes that more specifically address instances where someone is seeking a specific type of assistance. And the Claiborne fact pattern was one where there was no risk of infringement upon the specific limitation in 3582C2. That's what this court found, yes. And so given that 3582C2 was going to be respected, complied with, however you want to put that, I think that's how you explain that language in there of what difference does it make, whether it's 2106 or 3582. But it's hard to read what we said there as empowering 2106 to risk infringement with 2255, 3582 limitations, et cetera. I agree, Your Honor. And I think 2106, this court has referred to it, for example, in Sutton as essentially a general appellate review statute, and so certainly one that grants and generally describes appellate courts' powers. But those powers are then limited under other more specific statutes, such as 2255, such as 3582, and then also through other principles. Okay, so now you've got to deal with it. Mr. Hillis makes a fair point, as he usually does, and he says, but hold on, the sentencing guidelines matter. Even though they're advisory, they matter. And what he wants to be sure of is that his client, Brian McKenzie, gets the benefit of kind of untainted discretion, if you will.  Untainted of any. What's your response to that? So two things, Your Honor. First of all, ultimately, Congress empowered the Sentencing Commission to decide whether and to what extent retroactive guidelines could then affect the sentences of prisoners who are already serving terms of imprisonment. So that's set forth in 3582C2, as well as in 994U, which specifically says that the Sentencing Commission will specify in what circumstances and by what amount sentences of prisoners may be reduced. Here, the Sentencing Commission put forth 1B1.10. It's a binding policy statement under a Supreme Court precedent that says and specifically limits any modification to sentences affected by retroactive guidelines amendments, such that they can't be reduced any lower than the low end of the amended guidelines range. So here, the Sentencing Commission, Congress, the Supreme Court have all spoken and said that Mr. McKenzie is not eligible for any relief. Second, here, unlike in Claiborne, the District Court also did say that the sentence would be the same even if the guidelines calculation were different. And I know that Defense Counsel has pointed out that the District Court did not specifically tie that statement to the possibility of an amendment to the status points provision or to a change in criminal history category. I think we have to be careful, especially with utilizing that, stretching it beyond what we've tried to clean that language up, that simply a throwaway sentence of even if the statement has to be detailed and it has to walk through why the sentence would remain the same. And so I think we have to be careful when we're looking at the transcript in using that one line to tie it to irrespective of what the guideline is, the sentence would have been the same. Because I don't know if we can, looking at the transcript, be able to detail, follow the explanation for why. Yes, Your Honor. But respectively, I think the District Court's explanation of its sentence goes beyond just that one line. So there are those lines on page 21 of the government's appendix where the court says that the sentence I ought to impose here would be the same even if the guidelines calculation were different. But the District Court then goes on to say that the sentence would be the same even if the two disputed sentencing enhancements had not been applied. And those two sentencing enhancements that were in dispute— But does he give the explanation for why? Yes, Your Honor. I think so. So the District Court then goes on to lay out a pretty thorough 3553A analysis under the 3553A factors, explaining that it was weighing mitigation, including the defendant's remorse, childhood trauma, substance abuse, and custodial status during the pandemic, against significant aggravation. That aggravation included dangerous and escalating patterns of criminal activity. And that was regardless of the number of criminal history points assigned or the criminal history category. And then also the seriousness of the offense, that it was a multiple carjacking at gunpoint where a defendant intentionally ran over a police officer, injured a construction worker, endangered multiple people in a crowded area, and was armed as a convicted felon. Yeah, but isn't Mr. Hillis right that there's no— nobody's thinking about Amendment 825, 820. You're thinking about all these other things that you just referenced. I think that's right, Your Honor. But the court did say that ultimately it's— and this is in government's—on pages 23 to 24 of the transcript in the government's appendix. After making this explanation, the court says, in light of the reasons that I've stated on the record, this is why. And he goes on to impose this 300-month sentence and later again says on page 26, he cites the reasons under 3553 as to the term of imprisonment. And so here—and I think the court also pointed this out. Unlike in Claiborne, where the sentence was specifically tied to the low end of the guidelines range, or at least appeared to be, and there was no indication in the record as to whether that sentence would have changed, had that range been different, here the court said that the sentence would be the same, gave a thorough analysis specifically under the 3553a factors as to why, and then ultimately imposed a sentence where— and I see I'm almost out of time— but where the sentence on the carjacking counts varied significantly below guidelines, down to 180 months, whereas—which is far below both the low end of the range at the time as well as the amended range. And then varied upward from the 84-month mandatory minimum as to the firearm count. So it's one where the sentence itself also reflects that it was not, but based on the guidelines range. And so here, ultimately, a remand for resentencing cannot be just under these circumstances, where the defendant is not entitled to the relief he's seeking, where the district court and the government's view did make clear that it would impose the same sentence, and where remanding here actually undercuts efficiency and undercuts a more specific statute put in place to protect the finality of judgments. I think in response to some of the court's lines of questioning, if this court were to allow a remand under 2106 today, it would open the door to successive resentencings where defendants are not otherwise entitled to relief, and as Your Honor has alluded to, potentially undermine other more specific limits on appellate review. For these reasons, we ask this court to affirm and to deny defendants' request for remand. Okay. Ms. Chun, thank you. Mr. Hillis. I heard the government say that the sentence wasn't based on the guidelines. In our view, every sentence is based on the guidelines. We don't have to look much further than Gaul that says start with the correct calculation of the guidelines. So there's that. I would also say that the court in its guideline discussion in the transcript page the government mentioned isn't discussing criminal history at all. The court's discussing enhancements. And so we contextualize, we need to, to see what the court is in fact addressing when the court says the guidelines are what they are and my sentence would be the same regardless. That is with respect to the enhancements that were asked for and established. It's not with regard to criminal history. Yeah, I think you're right about that. I also think, I mean, what's perhaps embedded in Judge Pryor's observation, too, is you've got to be careful with runaway inoculating statements that are not specific because you'd make them and you would appellate proof everything. That's absolutely at odds with what we've said. Yeah, we hate that kind of approach. And we don't want to see us go back to it. But we wrestled with this as recently as Van Sack where the court was pretty definitive in saying that this doesn't address that. And so there's no inoculating statement, no effective inoculating statement on that subject. As Bury preceded Van Sack, it said the same thing. I mean, it's possible there could have been one here. I just don't think there was. Well, that's right, Judge, and that's why we're here at all because if we had something that contemplated this criminal history then we'd be in a different posture. But nobody did think about that, and that's important here because the judge, had he considered this, we wouldn't be making the argument that we're making. What do you do with Ms. Chun's point, though, that she's made my words, not hers. She's basically saying, look, I hear you on the anchoring effect, but the commission's spoken to it. Well, we are talking about the guidelines as they would be if we just delayed the proceeding by a little bit. My client would have captured the benefit of the lower guideline range. So I think that that's a critical feature here again. This is different from other cases where it was contemplated or discussed by the parties, taken into consideration by the judge. Had this proceeding been delayed just by a couple of months, we'd have a different result, and this was not a strategic thing. It's evident the client's attorney took very difficult positions on subjects. If he just was able to push this proceeding off, we'd have another result here, a different guideline range. Because 825 would be in effect? Yes. It's as easy as that. And so I would hate to see my client be subject to a limitation on 2106 that doesn't exist in the text, and we are not going to have a floodgate effect because these are unusual circumstances, and it would be just under the circumstances here under 2106. To say a person who did not get the benefit of this, but otherwise would have had the proceeding been delayed shortly and there's no evidence of a strategic consideration, that we should deny relief here. There's two different things. We're not talking about 3582C. We're not whittling away at that. We're not whittling away at limitations on habeas. We are asking for something that is just under the circumstances, and so we'd ask for relief. Okay. Very well. Mr. Hillis, thanks to you. Ms. Chun, the appeal is very well presented on both sides. We appreciate it very much.